UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | |
| | : | Criminal No. 03-66-S |
| ANTHONY SIMONELLI | : | |

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF MOTION FOR EARLY TERMINATION OF PROBATION

Defendant, Anthony Simonelli, by and through undersigned counsel respectfully submits the following Memorandum in Support of his Motion for Early Termination of Probation.

I. Changed Circumstances

At the time of Mr. Simonelli's sentencing on December 1, 2003, the Honorable William Smith was well aware of Mr. Simonelli's mental health issues, including anxiety, depression, panic disorder and agoraphobia. His downward departure was based in part on Mr. Simonelli's mental state as well as the Government's 5K Motion based on his substantial cooperation in other jurisdictions.

Indeed, Judge Smith stated that:

> "And if nothing productive can be achieved by the incarceration of this Defendant, and given the fact that he has paid a very substantial price for his conduct in terms of the forfeiture in addition to what I will impose today, then I just cannot see the sense of imposing a term of incarceration which would just cost the Government money and perhaps make this Defendant's situation that much worse upon his release, that we might in total make this situation worse instead of better. I just don't see a purpose being served by completely crushing this Defendant. And I think that's essentially what would happen if he's incarcerated, whether it be for 8 months or 20 months or 24 months.
>
> "So given that, I am going to grant the motion for departure to the Level of 10, which gets us into Zone B. The reasons for the departure are as I stated but I will, in order to be specific, are the Defendant's physical infirmities, which are outlined

> in paragraph 42 and 43 and 44 of the - - I guess it's 42 and 43 of the presentence report and supplemented by the letter, which I received today, from Dr. Mark Zimmerman with respect to the conditions of depression, panic disorder and agoraphobia, which he is treating the Defendant for and has been treating him for since 1996." See **Exhibit A**, partial transcript of defendant's sentencing.[1]

Clearly, the Court was cognizant of Mr. Simonelli's psychiatric condition and chose not to "crush" him with incarceration. What was not known at the time of sentencing, and what now represents a changed circumstance, is how Mr. Simonelli would fare mentally and emotionally while on probation.

After completing 6 months of home confinement and more than 2 ½ years of probation, Mr. Simonelli's anxiety and agoraphobia have increased as it relates to his status as a probationer. Attached hereto as **Exhibit B** is a letter from Mark Zimmerman, M.D., Mr. Simonelli's treating psychiatrist since 1996. He opines that, "Given Mr. Simonelli's propensity to dwell and ruminate in general, it is no surprise to me that completing monthly reporting statements increases his anxiety level." This increase is on top of long standing anxiety and agoraphobic issues dating back to 1996. He further concludes that Mr. Simonelli is not a malingerer, that he has a low tolerance for stress and that "the toll probation has taken on him is likely greater than that typically experienced by others in the criminal justice system".

Clearly, at the time of his sentencing, no one could envision the adverse psychological impact that probation would have on Mr. Simonelli's psyche, simply because he had never been on probation. At this juncture, it is clear that the concept of being on probation and actually filing

[1]Exhibit A is a partial transcript of the December 1, 2003, sentencing that was appended to the Judgment and Commitment Order by the Probation Department and states the justification for the Court's downward departure. It was not ordered by counsel, but is a part of the record in this case.

monthly reports increases his anxiety and triggers his agoraphobic condition so much so that he suffers more than the typical probationer.

Also attached as **Exhibit C** is an Affidavit and Waiver executed by Mr. Simonelli, waiving his presence at the January 23, 2007, hearing and describing his inability to address the Court at his last court appearance.

Judge Smith granted a downward departure and home confinement based in large part on the fact that incarceration would serve no legitimate purpose for Mr. Simonelli and would in all likelihood worsen his condition. At that time, no one could be expected to know what impact probation would have on his psyche. Three years later that impact can be assessed. Mr. Simonelli suffers depression, anxiety and agoraphobia to a greater degree experienced by other probationers in the criminal justice system. Given this circumstance, his age, and his deteriorating medical condition it is respectfully requested that Mr. Simonelli's Motion for Early Termination of Probation be granted.

Respectfully submitted,

ANTHONY SIMONELLI, Defendant
By his attorney,

/s/ Richard C. Bicki

Richard C. Bicki (#1772)
RICHARD C. BICKI, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
(401) 228-8338
FAX: (401) 274-2780
E-mail: rbickiesq@aol.com

CERTIFICATION

I hereby certify that on the 12th day of January, 2007, I provided a copy of this Supplemental Memorandum as follows:

**Electronically to:**
Mary Rogers, Esquire, Assistant United States Attorney, The Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903;

and

**By Regular Mail to:** Michelle Esposito, U.S. Probation, 2 Exchange Terrace, Providence, RI 02903.

/s/ Richard C. Bicki
Richard C. Bicki (#1772)
RICHARD C. BICKI, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
(401) 228-8338
FAX: (401) 274-2780
E-mail: rbickiesq@aol.com

THE COURT: So as I was saying, I think that the issue is the Defendant's infirmity and the various ailments that this Defendant has as outlined in the presentence report and as discussed by both Mr. Bicki and Mr. Sullivan, that combined with his age, do those merit a downward departure.

My concern is that the downward departure that would eliminate incarceration in this case is a substantial downward departure of seven levels. And that is substantially more than the departure granted for cooperation, for example. And I'm somewhat reluctant to do that particularly when I, you know, when I consider the level of the amount of drugs that were involved in this case and the equivalency of those drugs as set forth in paragraph 17 of the presentence report. This was a very substantial amount of OxyContin, and I'm -- one thing that is troubling me a little bit with respect to that level of a departure is, you know, the guidelines are very tough on drugs, and I don't think that one type of drug because maybe it's a more -- somehow it is less disfavored than other drugs should -- I guess what I'm saying is this transaction should be viewed in the same

EXHIBIT

A

light as any other drug transaction. These drugs are just as harmful as the other drugs that we see in these defendants.

So I don't want -- I want to be careful we're not treating someone differently because of the nature of the drugs that are involved in this case. There's no reason OxyContin should be treated any differently than marijuana or cocaine.

But having said that, I do look at the total picture in this case. And the fact that the Defendant has conceded to the forfeiture of the $30,000 that was the subject of the companion forfeiture act is not insignificant.

So as I look at the entire package before me, I believe that I can exercise my discretion and grant a departure to a level that will eliminate the possibility of incarceration in this case using or because of the Defendant's physical condition combined with his age. And I believe that I can fashion a sentence that appropriately addresses the need for punishment for the transaction and also ensures deterrence. And I think that can be done in this case and maybe it cannot be done in other cases.

I don't have any doubt in my mind, and

this is really what it gets down to, I don't have any doubt in my mind that this Defendant has learned a lesson. I don't think he's going to be out there dealing in OxyContin or any other drugs. And I just cannot see that a period of incarceration, whether it's 8 months or 12 months or 20 months after good time, I just can't see that that's going to further achieve either of those goals.

And if nothing productive can be achieved by the incarceration of this Defendant, and given the fact that he has paid a very substantial price for his conduct in terms of the forfeiture in addition to what I will impose today, then I just cannot see the sense of imposing a term of incarceration which would just cost the Government money and perhaps make this Defendant's situation that much worse upon his release, that we might in total make this situation worse instead of better. I just don't see a purpose being served by completely crushing this Defendant. And I think that's essentially what would happen if he's incarcerated, whether it be for 8 months or 20 months or 24 months.

So given that, I am going to grant the

motion for departure to the Level of 10, which gets us into Zone B. The reasons for the departure are as I stated but I will, in order to be specific, are the Defendant's physical infirmities, which are outlined in paragraph 42 and 43 and 44 of the -- I guess it's 42 and 43 of the presentence report and supplemented by the letter, which I received today, from Dr. Mark Zimmerman with respect to the conditions of depression, panic disorder and agoraphobia, which he is treating the Defendant for and has been treating him for since 1996.

I believe that those conditions when combined with the Defendant's age of 59, while 59 is not in and of itself old, I believe that when combined with his physical infirmities the Defendant's age is a significant factor.

And so it's my determination that the combination of these factors does, as Mr. Sullivan said, make this an extraordinary case that takes it out of the heartland of defendants that appear in this Court.

At a Level 10, as Mr. Perry indicated, I would have -- I have the ability to impose a term of probation up to or not more than five years; is

that correct? Five years.

PROBATION OFFICER: Yes, your Honor.

THE COURT: The first six months of that to be served in home confinement. I'm going to impose five years of probation in this case, the full term of probation. The first six months of that probation will be served in home confinement.

As a special condition I'm going to recommend or require that you participate, Mr. Simonelli, in a program of mental health treatment approved by the Office of Probation.

In addition, although there does not appear to be any indication of substance abuse in your presentence report, if it is determined by the Office of Probation that a program of substance abuse be required, then that too will become a term of the probation.

I'm going to forego the imposition of any fine in this case based on what I've learned with respect to the forfeiture action. Special assessment of $200 will be required to be paid.

Providence, RI 02903

and Human Behavior
Brown Medical School



Dear Mr. Bicki,

In response to your letter of December 20, 2006, I have been treating Mr. Anthony Simonelli for depression and panic disorder with agoraphobia since 1996. Currently he is minimally improved on medication, and he continues to have significant symptoms of both depression and agoraphobia. It is my understanding that Mr. Simonelli had a court appearance on December 20, 2006 and was too anxious to address the court. This is not a surprise to me insofar as his anxiety has been so severe as to cause Mr. Simonelli to leave his last job. Given Mr. Simonelli's propensity to dwell and ruminate in general, it is no surprise to me that completing monthly reporting statements increases his anxiety level. It has not been my impression that Mr. Simonelli is using his psychiatric symptoms to gain undue leniency from the court. Rather, he generally has a low tolerance for stress. In light of Mr. Simonelli's predisposition, I suspect that the toll probation has taken on him is likely greater than that typically experienced by others in the criminal justice system. Whether this is reason to shorten the probation I leave to the legal system.

If you have any questions please do not hesitate to call.

Sincerely,

Mark Zimmerman, M.D.

c:\ptletter\simonelli#3.doc

EXHIBIT
B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
VS. :
: Criminal No. 03-66-S
ANTHONY SIMONELLI :

AFFIDAVIT AND WAIVER

I, Anthony Simonelli, being duly sworn, hereby state that:

1. I am the Defendant in the above-captioned case.

2. I have been treated by Dr. Mark Zimmerman for depression, panic disorder and agoraphobia since 1996 and continue to treat with him on a regular basis.

3. I previously advised my attorney, Richard C. Bicki of the stress and anxiety that I felt while remaining on probation for an additional two years. After consultation, my attorney filed the Motion for Early Termination of Probation on my behalf. At that time, I did not understand that I would be going to Court for a hearing on the Motion. My attorney advised only that he would file the Motion and that the matter would be heard by the Court.

4. When my attorney advised me that, in his opinion, it would be in my best interest to attend the hearing, I reluctantly agreed to be present. I was also advised that it would be in my best interest to address the Court. However, once I was present in the public courtroom, I became very anxious and felt so panicked and helpless that I could not address the Court and so advised my attorney.

5. I have been fully advised by my attorney that I have an absolute right to be present for the continuation of my hearing on January 23, 2007. After consultation with my attorney, I hereby waive or give up my right to be present at the next hearing, and wish my attorney to proceed

EXHIBIT
C

at the upcoming hearing without my presence in the courtroom. This waiver is made knowingly and voluntarily by myself and I fully understand the nature of the proceedings pending before the Court. I am not under the influence of alcohol and further am not on any medication that impairs my judgment in making this decision to waive my presence.

6. I am fully satisfied with the legal representation provided by my attorney and have every confidence in his ability to represent my best interests in my absence.

7. I think of the fact that I have 2 more years left on my probation almost every day. It makes me feel very anxious, panicked, fearful and helpless. I cannot help but think about it, even though I try not to.

Anthony Simonelli

Subscribed and sworn to before me this 11th day of January, 2007, at 12 Job Street, Providence, Rhode Island.

Richard C. Bicki, Notary Public
My Commission Expires: 6/20/2009