UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 03-66 S |
| | : | |
| ANTHONY SIMONELLI | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Defendant's Motion for Early Termination of Probation (Document ("Doc.") #21) (the "Motion"). This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons stated below, I recommend that the Motion be denied.

**Facts and Travel**

On August 28, 2003, Defendant Anthony Simonelli ("Defendant" or "Mr. Simonelli") appeared before District Judge William E. Smith and pled guilty to one count of conspiracy to possess with intent to distribute Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and one count of conspiracy to distribute OxyContin without proper licensing, in violation of 21 U.S.C. §§ 353(b), 331(t), 353(e)(2)(A), 333(b)(1)(d), and 371 (Count 4). See Docket; see also Judgment in a Criminal Case (Doc. #18) ("Judgment") at 1. For these offenses, Defendant was sentenced by Judge Smith on December 1, 2003, to five years of probation on each count with the first six months of that probation to be served in home confinement.[1] See id. Defendant

[1] The requirement that Defendant serve the first six months of probation in home confinement was imposed as a special condition of probation. See Judgment in a Criminal Case (Doc. #18) ("Judgment") at 3.

was also ordered to pay a $200.00 assessment.[2] See Judgment at 4.

In sentencing Defendant to probation, Judge Smith granted Defendant's motion for a downward departure. See Order (Doc. #17); see also Motion for Downward Departure and Memorandum in Aid of Sentencing (Doc. #13). Presumably, the departure was made pursuant to §5K2.0 of the United States Sentencing Guidelines ("U.S.S.G."). See U.S.S.G. §5K2.0.

The instant Motion was filed on November 29, 2006. See Docket. The Government filed a response in opposition to the Motion on November 30, 2006. See Government's Objection to Defendant's Motion for Early Termination of Probation (Doc. #22) ("Objection"). A hearing on the Motion was conducted on December 20, 2006. See Docket. At the conclusion of that hearing, the matter was continued to January 23, 2007. On January 12, 2007, Defendant filed a Supplemental Memorandum in Support of Motion for Early Termination of Probation (Doc. #25) ("Defense Supp. Mem."). The Government filed a response to the Defense Supp. Mem. on January 18, 2007. See Government's Supplemental Memorandum in Support of its Objection to Defendant's Motion for Early Termination of Probation (Doc. #26) ("Supplemental Objection"). A further hearing on the Motion was conducted on January 23, 2007. Thereafter, the matter was taken under advisement.

**Parties' Positions**

At the December 20, 2006, hearing, defense counsel argued

[2] Defendant indicates in the Motion that he also suffered the forfeiture of $30,000.00. See Motion at 1. This forfeiture is not reflected in the Judgment. However, the sentencing transcript reflects that Judge Smith observed that Defendant "has paid a very substantial price for his conduct in terms of the forfeiture ...." Supplemental Memorandum in Support of Motion for Early Termination of Probation (Doc. #25) ("Defense Supp. Mem."), Exhibit ("Ex.") A (Sentencing Transcript Excerpt) at 3.

that there had been a change in circumstances since Defendant was originally sentenced and that this change warranted the termination of Defendant's probation. See Tape of 12/20/06 Hearing. Specifically, defense counsel argued that Defendant's physical and mental condition has deteriorated. See id.

As expressed in the Motion:

> 4. Mr. Simonelli has been permanently disabled since 1996 and has been diagnosed with acute limb threatening arterial ischemia. Since his sentencing, his medical condition has substantially deteriorated. In February, 2005, he had by-pass surgery on his right leg. In July, 2006, by-pass surgery was performed on his left leg. He has 75% neuropathy, and an extremely insidious vascular disease that is progressing. Notwithstanding these heroic procedures, the loss of both lower extremities cannot be ruled out. His limbs have further atrophied and his arteries are bulging and deteriorated. He experiences severe, debilitating pain and has been prescribed a regimen of pain medication to alleviate his distress. He has significant difficulty walking and rarely leaves his home.
>
> 5. Since his sentencing, Mr. Simonelli's long standing agoraphobic condition has worsened. Agoraphobia is marked by an abnormal fear of being helpless in a situation from which escape may be difficult or embarrassing and which is characterized by panic or anticipatory anxiety and avoidance of open or public places.
>
> 6. Consequently, Mr. Simonelli becomes extremely anxious when he revisits the thought that he is currently on probation and that he is required to have regular contact with his probation office. He lives in real fear that he will have to someday report to probation in person.

Motion at 2. The Motion goes on to state that Defendant has been a model probationer, that he has no prior record, that he has complied with all the conditions of his probation, and that he has rehabilitated himself. See id.

At the hearing, defense counsel cited the sentencing

transcript in support of his argument for termination of probation.[3] See Tape of 12/20/06 Hearing. In response, the Government suggested that the transcript demonstrated the opposite, namely that Defendant's infirmities existed at the time of sentencing and had been taken into account by the Court at that time. See id. The Government further argued that Defendant had not shown a change in his condition since being placed on probation and that Defendant's claim to the contrary was unsupported by any evidence. See id. After the Court observed that the record did not contain any new evidence to support the relief requested, defense counsel requested a continuance to obtain a statement from a medical professional. See id. The Court granted this request, and the matter was continued to January 23, 2007. See id.

Defense counsel subsequently submitted a letter from Mark Zimmerman, M.D. See Defense Supp. Mem., Exhibit ("Ex.") B (letter from Zimmerman to Bicki[4]) ("Zimmerman Letter"). The letter from Dr. Zimmerman states in relevant part:

> I have been treating Mr. Anthony Simonelli for depression and panic disorder with agoraphobia since 1996. Currently[,] he is minimally improved on medication, and he continues to have significant symptoms of both depression and agoraphobia. It is my understanding that Mr. Simonelli had a court appearance on December 20, 2006[,] and was too anxious to address the court. This is not a surprise to me insofar as his anxiety has been

---

[3] Counsel for the Government objected to defense counsel's reference to the sentencing transcript on the ground that defense counsel had not provided her with a copy. See Tape of 12/20/06 Hearing. As the Court ultimately continued the matter for a further hearing on January 23, 2007, the Government suffered no prejudice as a result of counsel's citation of the transcript at the first hearing.

[4] The letter from Dr. Zimmerman is either undated or the date has been cut off on the copy filed with the Court. See Defense Supp. Mem., Ex. B (Letter from Zimmerman to Bicki) ("Zimmerman Letter"). Dr. Zimmerman's address has similarly been either omitted or cut off from the letter. See id.

> so severe as to cause Mr. Simonelli to leave his last job. Given Mr. Simonelli's propensity to dwell and ruminate in general, it is no surprise to me that completing monthly reporting statements increases his anxiety level. It has not been my impression that Mr. Simonelli is using his psychiatric symptoms to gain undue leniency from the court. Rather, he generally has a low tolerance for stress. In light of Mr. Simonelli's predisposition, I suspect that the toll probation has taken on him is likely greater than that typically experienced by others in the criminal justice system. Whether this is reason to shorten the probation I leave to the legal system.

Zimmerman Letter.

Defense counsel also submitted an affidavit from Defendant, waiving his presence at the January 23, 2007, hearing. See Defense Supp. Mem., Ex. C (Affidavit and Waiver of 1/11/07) ("Defendant's Aff."). In that affidavit, Defendant states: "I think of the fact that I have 2 more years left on my probation almost every day. It makes me feel very anxious, panicked, fearful and helpless. I cannot help but think about it, even though I try not to." Id.

Defendant acknowledges in his supplemental filing that the Court was cognizant of Defendant's psychiatric condition at the time of sentencing. See Defense Supp. Mem. at 2. However, his counsel argues that "[w]hat was not known at the time of sentencing, and what now represents a change in circumstances, is how Mr. Simonelli would fare mentally and emotionally while on probation." Id. Citing the letter from Dr. Zimmerman, defense counsel asserts that:

> [A]t the time of his sentencing, no one could envision the adverse psychological impact that probation would have on Mr. Simonelli's pysche, simply because he had never been on probation. At this juncture, it is clear that the concept of being on probation and actually filing monthly reports increases his anxiety and triggers his agoraphobic condition so much so that he suffers more than the typical probationer.

Id. at 2-3. Based on this circumstance, Defendant's age, "and his deteriorating medical condition ...," Defense Supp. Mem. at 3, defense counsel requests that the Motion be granted, see id.

The Government disputes that Dr. Zimmerman's letter provides any basis for granting the Motion. See Supplemental Objection at 1-2. It notes that the letter is a response to a letter from defense counsel and that the letter from defense counsel has not been made an exhibit so that Dr. Zimmerman's letter may be viewed in context. See id. at 1. The Government contends that this omission is especially problematic because the Court had directed defense counsel to make the medical professional aware that Defendant had appeared for the December 20, 2006, hearing even though he did not have to appear.[5] See id.

Regarding the standard of proof, the Government notes that Dr. Zimmerman "merely states that the Doctor '*suspect[s]*' that 'the toll probation has taken on [the Defendant] is likely greater than that typically experienced by others in the criminal justice system.'" Id. at 2 (quoting Zimmerman Letter)(alteration in original). The Government contends that this statement does not rise to the level of the standard of more likely than not. See id.

Additionally, the Government contends that:

> There is no evidence whatsoever that Dr. Zimmerman has any basis for comparison, i.e., whether he has any experience in treating even one other member of society who has been a Defendant in the criminal justice system, or even what the conditions of the Defendant's probation

[5] At the December 20, 2006, hearing, the Court indicated that, if defense counsel intended to submit a letter from a medical doctor or other mental health professional regarding the adverse effect which probation was allegedly having on Defendant, defense counsel should make the person providing the statement aware of the fact that Defendant had appeared in court for the hearing. See Tape of 12/20/06 Hearing.

> entail. It further appears that Dr. Zimmerman based his opinion on a letter written by defense counsel, rather than an interview with Defendant. The Court is left to speculate at what information was provided to the psychiatrist by defense counsel.

Supplemental Objection at 2.

With reference to Dr. Zimmerman's statement that Defendant has a "low tolerance for stress," Zimmerman Letter, the Government notes that there is no indication how long this predisposition has existed, see Supplemental Objection at 2. The Government observes that if this predisposition dates to the time of sentencing, then there has been no change in circumstances regarding Defendant. See id. Lastly, the Government points out that Dr. Zimmerman states that Defendant's condition has actually improved with medication, albeit minimally. See id.

**Court's Determination**

The Court is unpersuaded that the Motion should be granted. Defendant received the benefit of a very substantial downward departure because of his physical infirmities, depression, panic disorder, and agoraphobia. See Defense Supp. Mem., Ex. A (Sentencing Transcript Excerpt) at 1, 4. Indeed, Judge Smith noted that the seven levels which he departed downward based on these grounds was "substantially more than the departure granted for cooperation ...."[6] Id. As a result, Defendant was spared from having to serve even a single day in prison for serious drug offenses.

Defendant concedes that Judge Smith was aware of his psychiatric condition at the time of the sentencing and that the

---

[6] Defendant's offense level was 21 and his criminal history category was I. The Sentencing Guidelines range for an offense level of 21 with a criminal history category of I is 37-46 months. Judge Smith departed downward a total of 11 levels to an offense level of 10. This made Defendant's sentencing range 6-12 months and allowed Judge Smith to impose five years probation with the special condition that the first six months be served in home confinement.

downward departure was based partially on that condition. See Defense Supp. Mem. at 2. Defendant's contention that no one could envision the alleged "adverse psychological impact," id., implies that real and substantial harm is occurring because Defendant is required to be on probation and to submit monthly probation reports. However, this Court does not find that the letter from Dr. Zimmerman supports such a conclusion. As the Government has pointed out, it is not clear whether the letter was the product of an examination of Defendant or simply a response to a letter from Defendant's attorney. Dr. Zimmerman twice states in the letter that certain facts, presumably provided to him by defense counsel, are no "surprise." Zimmerman Letter. Dr. Zimmerman's opinion that probation is taking a toll on Defendant greater than that experienced by other defendants is expressed only as a "susp[icion]," id., and not to any degree of medical certainty. Additionally, Dr. Zimmerman's penultimate sentence ("Whether this is reason to shorten the probation I leave to the legal system.") appears to suggest that the stress and anxiety which Defendant may be experiencing as a result of being on probation is not so great that significant harm will result unless probation is terminated.

Defendant's claim that he thinks about being on probation almost every day is not, in the view of this Magistrate Judge, a reason to terminate his probation. Certainly, in placing a defendant on probation, a court expects that s/he will keep that fact in mind as means of insuring that the defendant will abide by the law in the future. Also, given the serious nature of Defendant's offenses and the very lenient disposition which he received, the fact that he experiences some level of discomfort in being reminded of his crime does not seem to the Court to constitute excessive punishment.

Finally, Defendant's claim that "[h]e lives in real fear

that he will have to someday report to probation in person," Motion at 2, is incongruous given his appearance at the December 20, 2006, hearing. While defense counsel offered the explanation that Defendant's appearance at the hearing was due to counsel's advice that Defendant should appear out of respect for the Court, see Tape of 12/20/06 Hearing, it is difficult to reconcile Defendant's professed inability to deal with the stress resulting from having to complete monthly supervision reports with his seeming ability to appear in court before a judge, a proceeding which one would think would be more stressful. Even accepting that Defendant "was too anxious to address the court," Zimmerman Letter, his presence at the hearing strongly suggests that he is able to handle the "stress" of completing monthly supervision reports and being on probation, even if it makes him feel, as he claims, anxious, panicked, fearful, and helpless, see Defendant's Aff. ¶ 7.

**Conclusion**

For the reasons stated above, I recommend that the Motion be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 18, 2007